# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SANDRA KAY T.,[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 24-1025-JWL |
| CAROLYN COLVIN,[2] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On November 30, 2024, Ms. Colvin was sworn in as Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Martin O'Malley as the defendant.  Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

Plaintiff protectively filed applications for SSDI and SSI benefits on November 19, 2019. (R. 25, 284-97). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ failed appropriately to evaluate her need to elevate her legs and failed to consider the effect of her mental impairments on her ability to perform her past relevant work (PWR) which required a Specific Vocational Preparation (SVP) level greater than 2.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or

equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920.  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in the order presented in Plaintiff's Social Security Brief.

## II.    Mental Impairments

Plaintiff acknowledges the ALJ found her anxiety, depression, and panic attacks "had no more than a minimal effect on [her] ability to perform basic mental work activities."  (Pl. Br. 7).  She argues, however, that such a finding includes only the ability to perform basic mental work activities required to perform unskilled work, but that

4

Plaintiff's past relevant work was a composite job including work as a cook which is at least semi-skilled (SVP 3) and may be skilled work as high as SVP 7. (Pl. Br. 9). She argues, "Semiskilled and skilled work often present 'an increasing requirement for understanding and memory and for concentration and persistence.'" Id. (quoting Program Operations Manual System (POMS) § DI 25020.010(B)(4), bold omitted); available online at: https://secure.ssa.gov/poms.NSF/lnx/0425020010, last visited, December 30, 2024. She argues the ALJ erred in failing specifically to describe the mental demands of her PRW or to compare those demands with Plaintiff's mental limitations. Id., at 10-11 (citing Richard De La T. v. Saul, Civ. A. No. 20-1070-JWL, 2020 WL 6798771, at *4 (D. Kan. Nov. 19, 2020); and Leah A. D. v. Saul, Civ. A. No. 19-1223-JWL, 2020 WL 2849475, at *4 (D. Kan. June 2, 2020)).

In her Response Brief the Commissioner points out the ALJ found Plaintiff has at most mild limitations in the four broad mental functional areas and found her mental impairments are not severe. (Comm'r Br. 11). She noted, "the Tenth Circuit has recognized that even a moderate limitation 'does not necessarily translate to a work-related functional limitation for purposes of the RFC assessment.'" Id. (quoting Vigil v. Colvin, 805 F.3d 1199, 1203 (10th Cir. 2015)). The Commissioner argues the ALJ properly found the objective medical evidence, Plaintiff's activities, her mental health treatment, and the prior administrative medical findings of the state agency psychological consultants all support his finding Plaintiff's mental impairments produce no significant functional limitations, and substantial evidence supports that finding. Id. 12-15.

The Commissioner argues the ALJ properly found Plaintiff capable of performing her PRW in the composite job of waitress-cook which is semiskilled with both component jobs at SVP 3.  (Comm'r Br. 16).  In a footnote, the Commissioner argues the ALJ properly identified the cook occupation in the composite job cited by the vocational expert (VE) because the Dictionary of Occupational Titles (DOT) number cited by the VE was non-existent but was only one digit off from the number relied upon by the ALJ and the VE specifically testified the cook component of the composite job was SVP 3 whereas none of the other DOT cook jobs suggested by Plaintiff are SVP 3 jobs.  Id., n.4.  The Commissioner argues this court's decision in Lora L. v. Kijakazi, Civ. A. No. 22-1270-JWL, 2023 WL 7407677, at *4 (D. Kan. Nov. 9, 2023) "is directly on point and determinative."  Id. 16-17.

### A.     Legal Standard Applicable to the Errors Alleged

Plaintiff's allegation of error implicates the ALJ's evaluation at step two (whether Plaintiff has mental impairments which are severe) and step four (whether Plaintiff can perform past relevant work) of the sequential evaluation process.  At step two of the process, an impairment is not considered severe if it does not significantly limit Plaintiff's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1522, 416.922.  The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, Plaintiff must make only a "de minimis" showing.  Hinkle v. Apfel, 132 F.3d

6

1349, 1352 (10th Cir. 1997). Plaintiff need only show that an impairment would have more than a minimal effect on her ability to do basic work activities. Williams, 844 F.2d at 751. However, she must show more than the mere presence of a condition or ailment. Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)). If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on Plaintiff's ability to do basic work activities, it could not prevent Plaintiff from engaging in substantial work activity and will not be considered severe. Hinkle, 132 F.3d at 1352.

At step four of the sequential evaluation process, the ALJ is required to make specific findings in three phases. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996) (citing Soc. Sec. Ruling (SSR) 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings 809 (1983)). In phase one, "the ALJ should first assess the nature and extent of [the claimant's] physical limitations." Winfrey, 92 F.3d at 1023. In phase two, the ALJ must "make findings regarding the physical and mental demands of the claimant's past relevant work." Winfrey, 92 F.3d at 1024. Finally, in phase three, the ALJ must determine "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." Id., 92 F.3d at 1023. These findings are to be made on the record by the ALJ. Id. at 1025; see also, SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings, at 813 ("decision must contain ... specific findings of fact" regarding each of the three phases).

The Tenth Circuit has explained that an ALJ may properly rely upon vocational expert (VE) testimony in making his findings at phase two and phase three of step four.

Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). The ALJ may not delegate the step-four analysis to the VE. He may, however, rely on information supplied by the VE regarding the demands of Plaintiff's past relevant work and whether a person with Plaintiff's RFC could meet those demands, and he may accept the VE's opinions. Doyal, 331 F.3d at 761.

### B.     Discussion

As a preliminary matter, the court finds the ALJ reasonably identified DOT # 313.374-014 (light, SVP 3) as the cook component of Plaintiff's composite waitress/cook job. The VE identified the cook component of the composite job as "cook, which is 313.374-074, which is light, semiskilled, SVP of 3." (R. 69). Plaintiff notes that the number identified by the VE "does not exist within the DOT," and argues that "[t]he ALJ presumed the expert intended to provide the code 313.374-014, rather than 313.374-074." (Pl. Br. 9). She then suggests three other cook or chef occupations which may have been intended by the VE: Cook, 313.361-014 (SVP 7, skilled work); Cook, Fast Food, 313.374-010, (SVP 5, skilled work); Chef, 313.131-014, (SVP 7, skilled work).

The problem with Plaintiff's argument is she provides no basis to believe any other cook or chef occupation was the one intended by the VE and she does not provide a basis to discount the ALJ's rationale for finding 313.374-014 was the DOT number intended. The ALJ did not presume the VE intended 313.374-014 as Plaintiff argues, rather he provided five reasons he determined that was the occupation the VE intended. It had one digit different (014 instead of 074), was a cook occupation, was in the hotel

8

and restaurant industry, had a light exertional level, and had an SVP of 3. (R. 33, n.1). The court finds three factors preclude finding error in the ALJ's finding. It is a reasonable finding; a "1" and a "7" are easily misread or transposed, especially if they have been handwritten in any notes such as a VE might bring to a hearing to record his consideration of the occupation; it is the only cook occupation suggested here with an SVP of three, and the VE also stated an SVP of 3 for the occupation he identified.

### C.     Analysis

Plaintiff argues the ALJ's finding her mental impairments not severe means he found they had no more than a minimal effect on her ability to perform <u>basic</u> mental work activities. (Pl. Br. 7). She argues the ALJ did not evaluate whether she had mental functional limitations in the more advanced mental work activities required in semi-skilled work such as the SVP level 3 work required in Plaintiff's PRW as a cook. (Pl. Br. 8-9). She argues,

> It is unclear from the record how mild limitations in the ability to perform basic work activities, as found by the ALJ, would impact [Plaintiff's] ability to perform the more rigorous requirements of her waitress/cook past work. While the ALJ briefly discussed the physical demands of the composite waitress/cook position, the ALJ did not specifically describe the mental demands of the work, much less compare such mental requirements against [Plaintiff's] mental limitations.

<u>Id.</u>, at 10-11 (citing R.29, 34).

The ALJ explained his evaluation of Plaintiff's mental impairments:

The claimant's last follow-up with a psychiatrist was in April 2019, ten months prior to the amended alleged onset date (Ex. 2F/57). At that time, the claimant reported that she was feeling much better, after self-discontinuing her medication, and that she was not having any undue depression or anxiety, was feeling more motivated, upbeat, and energetic,

9

> and her mood was steady and stable. She even reported that her concentration had improved and her anger outbursts had subsided (Ex. 2F/57). Since then, she has followed with her primary physician, but has not been receiving any specific mental health treatment or medications. Contrary to her allegations, in April 2022, she again reported that she was doing well with regard to her depression and anxiety, while being completely off medications for a year without difficulty (Ex. 7 F/6). Notably, other than her reported history during a February 2020 consultative exam, the claimant has not mentioned any panic attacks since August 2019 (Ex. 2F/51; 3F/1). There are also no clinical findings or other evidence of memory or concentration issues to support her allegations (e.g., Ex. 2F/13). In March 2022, the claimant stated that she has a poor memory and difficulty remembering everything that had gone on recently (Ex. 12F/6). However, she also admitted that she had been a heavy drinker all her life and had only recently cut down about two weeks earlier, but was still drinking 2-3 beverages a few times a week. Regardless, there were no objective findings to support her alleged memory issues.

(R. 28). He concluded, "the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." Id. 29.

The ALJ adopted the VE's testimony that both the waitress component and the cook component of Plaintiff's composite PRW had the physical demands of light work and the mental demands of SVP 3 level, semiskilled work. Id. 33-34. He found, "in comparing the demands of this work as actually performed by the claimant to the claimant's residual functional capacity, the claimant is able to perform it." Id. 34.

Thus, the ALJ's decision, as cited above, belies Plaintiff's arguments. It reveals the ALJ did discuss the mental demands of Plaintiff's composite job and stated he compared those demands with the RFC assessed. As the Tenth Circuit noted long ago, the general practice in reviewing a decision "is to take a lower tribunal at its word when it

declares that it has considered a matter." Hackett, 395 F.3d at 1173 (citing United States v. Kelley, 359 F.3d 1302, 1304-05 (10th Cir. 2004) (district court must consider certain factors before imposing prison time for probation violation, but court need only say that it has done so); cf. Andrews v. Deland, 943 F.2d 1162, 1170 (10th Cir. 1991) (refusing to "look behind a district court's express statement that it engaged in a de novo review of the record")). If Plaintiff seeks to show error in a case such as this, she must cite record evidence which compels a finding that Plaintiff does not have the mental capacity required by the job. Allison Rena S. v. Kijakazi, Civ. A. No. 22-1016-JWL, 2023 WL 2374807, at *4-5 (D. Kan. Mar. 6, 2023). Plaintiff has not done so here.

### III. Need to Elevate Legs

Plaintiff reported that "she suffered from painful swelling if she stood for longer than 20 minutes at a time" and "needed to elevate her legs about 8 to 12 inches for one hour at least twice a day to reduce her painful symptoms." (Pl. Br. 14) (citing R. 60, 61, 736). She argues the ALJ's finding her allegations are inconsistent with the record evidence is "deficient because he failed to provide more than mere conclusions in support of his determination." Id. She argues this is so because the ALJ "failed to affirmatively link [sic] his finding with substantial evidence." Id. 15. She argues the ALJ's finding that after "she was started on spironolactone and advised to stop drinking, … there is no evidence of recurrent ascites [(fluid accumulation in the abdomen)] or other complications" (R. 32), did not include a citation to record evidence "and was merely a conclusion in the guise of findings." Id. at 15-16. She argues,

11

> The ALJ pointed to no evidence that affirmatively demonstrated [Plaintiff's] leg swelling had improved, but rather appealed to a supposed lack of evidence. But the ALJ's presumption that [Plaintiff's] leg swelling improved following medication and alcohol cessation runs contrary to [Plaintiff's] testimony on the matter, and an unfounded presumption cannot support an ALJ's decision to reject a claimant's symptoms—particularly where the ALJ acknowledged, as in this case, that [Plaintiff's] medically determinable impairments could reasonably be expected to cause her reported symptoms.

(Pl. Br. 16).

Plaintiff next claims the ALJ's reliance on Plaintiff's testimony that "everything has been better since she stopped drinking about six months prior to the hearing" (R. 32), was improper reliance on vague hearing testimony wherein Plaintiff was likely confused. (Pl. Br. 16-17). Finally, Plaintiff argues the ALJ failed to evaluate Plaintiff's physician's recommendation that she "elevate feet as able." Id. 17 (quoting R. 738). The Commissioner responds that the ALJ reasonably found Plaintiff's allegations of disabling symptoms inconsistent with the other evidence. (Comm'r Br. 5-11).

### A.     Standard for Evaluating Allegations of Disabling Symptoms

The court's review of an ALJ's evaluation of a claimant's allegations of symptoms is deferential. Such determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations[3] are peculiarly the province of the finder of

---

[3] Luna, Thompson, and Kepler, cited hereinafter, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified

fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

The framework for a proper analysis of a claimant's allegations of symptoms is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. See, Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework) (considering allegations of pain). The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating allegations of symptoms: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii). The court has

---

at 20 C.F.R. § 404.1529). Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 Fed. App'x. 542, 546 (10th Cir. 2017). Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on March 30, 2023, when this case was decided. Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

13

recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner. Luna, 834 F.2d at 165-66. These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

### B.  The ALJ's Findings

As suggested above regarding the ALJ's evaluation of Plaintiff's mental impairments, the ALJ noted Plaintiff alleged she was disabled from her mental impairments because those impairments "make it hard for her to concentrate and get along with people because she gets very agitated and frustrated with others and she cannot stay focused on just one project at a time." (R. 28). However, he noted Plaintiff's allegations were inconsistent with her report at her last follow-up with a psychiatrist in April 2019, which was itself ten months before her amended alleged onset date. Id. At that office visit, Plaintiff "reported that she was feeling much better, after self-discontinuing her medication, and that she was not having any undue depression or anxiety, was feeling more motivated, upbeat, and energetic, and her mood was steady and stable. She even reported that her concentration had improved, and her anger outbursts had subsided." Id.

The ALJ summarized Plaintiff's allegations of disabling physical symptoms:

14

> The claimant alleges disability due, in part, to shoulder and back pain and neuropathy in her feet.  She says physical labor is no longer possible for her, and she has difficulty standing, lifting, and using her wrist for long periods.  At the hearing, the claimant testified that she is unable to work due to injuries she sustained in multiple car accidents several years ago.  Now, she says she cannot use her right arm or shoulder because it is "not right."  She also testified that she had paracentesis [(removal of abdominal fluid)] in December 2021 and that it is difficult for her to drive, stand, and walk due to neuropathy.  She said that she has to elevate her legs for about one hour, at least twice a day, due to swelling in her lower legs and feet.  She said she has numbness in her feet and that she has to lean against a wall or hold onto a fence when walking, and that she can only walk about six blocks at a time.  She testified that she can force herself to stand for about three to four hours at a time, but she will feel very achy and anxious, she cannot lift more than five to seven pounds, and she can sit for about three hours at a time.  She also testified that she will lose feeling in her wrist, thumb, and index finger and her right shoulder will start popping out of place.  She said it is hard to reach or hold onto things with her right, dominant arm.

(R. 31) (citations omitted).

The ALJ noted that Plaintiff had a consultative examination on February 22, 2020, at which she reported problems consistent with her allegations of disability and the physician noted some mild abnormalities but "his examination was also otherwise completely unremarkable, with normal motor and sensory findings.  The claimant also had no difficulty with orthopedic maneuvers, such as getting on and off the exam table, heel and toe walking, arising from the sitting position, or hopping." Id.  He noted that, "despite her testimony and allegations of persistent pain and difficulty using her right, dominant arm, … there are no other records or reports to her providers regarding residual pain and other symptoms related to these remote motor vehicle accidents." Id.  He noted other instances where Plaintiff reported problems to healthcare providers, but examination did not provide any support for the alleged problems. Id. 31-32.

The ALJ also found, "contrary to the claimant's testimony and allegations of numbness and difficulty walking for extended periods, physical examinations have consistently shown a normal gait with grossly normal motor and neurological function other than some subjective pain in her knees." (R. 32). He noted that Plaintiff was discovered to have cirrhosis of the liver with ascites in October 2021, and underwent paracentesis in December 2021. Id. In March 2022 Plaintiff "presented with abdominal distention with ascites and 2+ edema bilaterally," but "was started on spironolactone and advised to stop drinking, and there is no evidence of recurrent ascites or other complications. The claimant also testified that everything has been better since she stopped drinking about six months prior to the hearing." Id. Finally, the ALJ found Plaintiff "reports activities that are not limited to the extent one would expect in light of her allegations of disabling medical impairments," id., and are "just another indication that the claimant retains the capacity to perform the requisite physical and mental tasks that are part of everyday basic work activity." Id., at 33. The ALJ concluded,

> That indication is further supported by the objective medical signs and findings and the claimant's minimal treatment, as discussed above. All of these factors, considered together, demonstrate the claimant's ability to engage in full-time, competitive work within the parameters of the above residual functional capacity.

Id.

### C.  Analysis

The ALJ's findings cited above are based upon many of the regulatory and judicial factors for evaluating a claimant's allegations of disabling symptoms and are supported by citation to the record evidence. And in the face of this, Plaintiff attacks but one aspect

16

of the rationale the ALJ relied upon to discount Plaintiff's allegations of disabling symptoms. Even were Plaintiff's attack to succeed, the court would find that the remainder of the ALJ's rationale is more than sufficient to support his decision to discount Plaintiff's allegations of disabling symptoms. See, Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004) ("While we have some concerns regarding the ALJ's reliance on [two minor areas of the ALJ's rationale], we conclude that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record.").

Moreover, the court finds no error as alleged by Plaintiff. Plaintiff is correct the ALJ did not affirmatively cite to record evidence supporting his finding that after Plaintiff was started on spironolactone and advised to stop drinking there was "no evidence of recurrent ascites or other complications." (R. 32). That is the essence of a finding of "no evidence," and such a finding is the opposite of a "conclusion in the guise of findings" (Pl. Br. 16), it is an affirmative link to the lack of evidence. If Plaintiff believes the finding is erroneous, it is her responsibility, as the party with the burden of proof, to cite to record evidence demonstrating the error—that there is such evidence. She has not done so here, and the court finds no such evidence.

A similar result obtains regarding Plaintiff's allegation of error in finding she "also testified that everything has been better since she stopped drinking about six months prior to the hearing." (R. 32). Plaintiff argues she expressed confusion regarding the ALJ's line of questioning in this regard, that she likely remained confused in answering the ALJ's question, and the ALJ erroneously relied on her confusion in making this finding.

17

As Plaintiff argues, she did express confusion regarding the treatment she received for ascites resulting from her alcohol usage. The ALJ asked,

> When's the last time you had alcohol?
>
> A  Oh about six months ago, maybe a little longer.
>
> Q  And you had the paracentesis in I think meant '21, [sic] was it December of '21?
>
> A  Okay, I do not understand that word.
>
> Q  Where they took the fluid off of your belly.
>
> A  Oh, that was, yeah, '21, I –
>
> Q  And I wrote 2011 but I got a '21 on that. And have you had to have any additional treatment for that since?
>
> A  No, sir.
>
> Q  Has it gotten better since you stopped drinking?
>
> A  Yes, everything got better.
>
> Q  What is it that's keeping you from working right now?
>
> A  From my car wreck, …

(R. 56-57). It is a reasonable inference from this colloquy, as the ALJ found, that Plaintiff "testified that everything had been better since she stopped drinking about six months prior to the hearing." (R. 32).

Plaintiff argues, "no reasonable person would interpret this exchange as an indication that [Plaintiff] no longer suffered problems related to painful swelling of her legs—something she explicitly testified was a continuing issue four pages later in the hearing transcript." (Pl. Br. 17) (citing R. 61). Her argument continues, "The ALJ's reliance upon [Plaintiff's] vague, out-of-context statement that 'everything got better'

was not a legitimate basis upon which to reject [her] reported symptoms of painful leg swelling." Id. The problem with Plaintiff's argument is that the ALJ did not reject Plaintiff's reported symptoms of painful leg swelling. Rather, he rejected her testimony that her leg swelling was disabling. Specifically, he rejected her claim it required her to elevate her legs for one hour twice a day when he found she can stand and/or walk six hours in a day. In total, the evidence cited by the ALJ supports that finding and Plaintiff cites no evidence that compels a different finding. In fact, when asked by her attorney at the hearing "Generally how long can you stand for [sic] at a time?" (R. 62), Plaintiff responded, "I'm judging my way here at home, probably three hours, maybe four at the most." Id.

Finally, Plaintiff's argument the ALJ failed to evaluate her physician's opinion she should "elevate feet as able" does not show error. Plaintiff ignores the physician's entire statement: "Re edema advised doing 3 days of water pills, she has some available at home. Elevate feet as able, could do TED hose." (R. 738). In context, the physician's statement indicates she viewed the swelling as a short-term issue which would be resolved soon. At least it was reasonable for the ALJ to reach that conclusion, and Plaintiff has not shown otherwise. Beyond that, "elevate feet as able" does not suggest the doctor opined Plaintiff needs to elevate her feet for about an hour, twice a day.

Moreover, the ALJ noted Plaintiff "said that she has to elevate her legs for about one hour, at least twice a day, due to swelling in her lower legs and feet" when he summarized Plaintiff's allegations of disabling symptoms. Id. 31. These are some of Plaintiff's alleged symptoms he found "are not entirely consistent with the medical

evidence and other evidence in the record," and concluded "do not warrant any additional limitations beyond those established in the residual functional capacity previously outlined in [his] decision." Id. 33. Although Plaintiff disagrees with the ALJ's conclusion, she does not point to evidence which compels a different conclusion. The ALJ's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401. More is not required.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated December 30, 2024, at Kansas City, Kansas.

                                        s:/ John W. Lungstrum
                                        **John W. Lungstrum**
                                        **United States District Judge**